PER CURIAM:
This consolidated appeal arises out of a putative copyright infringement action. In his pro se action, the gravamen of which focuses upon ownership of a musical work, Ronald Calhoun appeals the district court’s grant of summary judgment in favor of Lillenas Publishing Company, Nazarene Publishing House, Beacon Hill Music, Crystal Sea Recordings, Faith Music, Pilot Point Music, Psalmsinger Music, Zonder-van Publishing House, John Mathias, Hardy Weathers, and Ken Bible \ docketed as our case No. 01-11413, and The Southern Baptist Convention, Lifeway Christian Resources, The Sunday School Board of the Southern Baptist Convention Press, Broadman & Holman, Baptist Book Stores, The United Methodist Publishing House, Cokesbury Stores, Christian Copyright License International, World Music, Nelson/Word Ministry Services, Marana-tha Music, Integrity Music,, Integrity Church Services, Music Services, Christian Artist Music (C.A.Music), Cam Floria, Jeffery Buchan, and Bob McGee (hereinafter collectively referred to as “McGee/Assigns”), docketed as our case No. 01-11415. The district court found that Calhoun had no claim for copyright infringement because there was insufficient evidence to show that (1) McGee had access to Calhoun’s song'“Before His Eyes,” and (2) McGee’s chorus “Emmanuel” was strikingly similar to “Before His Eyes.” We AFFIRM the district court’s judgment, albeit upon another basis.[2] We conclude that the evidence compels the conclusion that Calhoun’s copyright claims should be barred by McGee/Assigns’ claim of independent creation.[3]
I. BACKGROUND
Calhoun wrote the song “Before His Eyes” in 1969.[4] He recorded an album containing “Before His Eyes” on the Charisma record label in 1970, and it was subsequently released to the public for sale *1231 and distribution. Calhoun has no records of any royalties from the album.
In March of 1971, Calhoun received a writer’s clearance of his composition stamped and registered with the licensing performance agency Broadcast Music Incorporated (“BMP). BMI cleared and announced the work in their forthcoming bulletins to stations. Calhoun promoted and performed this musical work by means of concerts, and performances in churches, and on television and radio. However, the total amount of royalties Calhoun has received to date-is $11.
In 1976, Robert McGee, then an associate pastor at The King’s Temple Church[5] in Seattle, Washington, wrote the chorus “Emmanuel.” The chorus first appeared in a collection of 11 choruses entitled Choruses From The King’s Temple, 1976 Book I and was used by the church in' their worship services. In 1983, C.A. Music, Inc. acquired the copyright in “Emmanuel” and licensed the song to dozens of companies. To ensure proper title to the copyright in “Emmanuel,” C.A. Music acquired several affidavits from eye witnesses who testified that they watched McGee independently create the song. R3-69-3. Since then, “Emmanuel” has appeared in a number of Christian denomination hymnals, and has been translated into dozens of foreign languages. For much of the 1980s and 1990s, it was ranked in the top 20 requested songs rated by Christian Copyright Licensing, Inc., a copyright clearinghouse company that monitors and reports licensing transactions for Christian music.
From 1989 until 1998, Calhoun was a part-time organist at a United Methodist Church. As an organist, he played for choir rehearsals three times a week and played from hymnals which included “Emmanuel.” He admits to using these hymnals, but Calhoun contends that he did not discover “Emmanuel” until 1997.
On 19 July 1999, Calhoun filed a pro se complaint for copyright infringement in the Southern District of Georgia against various publishing houses and record labels. Calhoun alleged that the chorus “Emmanuel” was based on the chorus section of “Before His Eyes,” and that McGee/Assigns published, marketed, promoted, and distributed the alleged infringing work without Calhoun’s permission. Calhoun filed a second complaint on 30 March 2000 against various publishing houses, churches [1] and Christian book stores. The district court consolidated both actions, noting that the claims were identical.
McGee/Assigns moved for summary judgment arguing that McGee independently created and had no reasonable access to “Before His Eyes” when he created “Emmanuel.” They further argued that “Emmanuel” was not substantially similar to “Before His Eyes” because the lyrics, cord progressions, and keys of the two compositions were different. Additionally, McGee/Assigns asserted that McGee’s action was barred by the three-year statute of limitations and the equitable doctrine of laches, due to his long delay in filing suit.
Calhoun responded by asserting that McGee had access to “Before His Eyes” because it was promoted at concerts, churches, television, and radio stations. Further, he contended that the two works were strikingly similar and that the delay and laches arguments were without merit because he first discovered the alleged infringement in 1997, within the three-year statute of limitations for filing this action.
The district court granted McGee/Assigns’ motion for summary judgment finding that there was insufficient evidence to show both access and striking similarity. *1232 The district court did not alternatively consider McGee/Assigns’ statute of limitations, delay, and laches arguments. Calhoun filed a timely appeal of the judgment.
II. DISCUSSION
We review a district court’s grant of summary judgment de novo, apply the same standard as the district court, and review all facts and reasonable inferences in light most favorable to the nonmoving party. Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir.1999). Summary judgment is proper when “there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c).
Two elements must be proven in order to establish a prima facie claim for copyright infringement: (1) that Calhoun owns a . valid copyright in “Before His Eyes,” and (2) that McGee copied “constituent elements of the copyrighted work that are original.” Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). To establish copying, Calhoun must show that McGee had access to “Before His Eyes,” and that “Emmanuel” is so substantially similar to “Before His Eyes” that “an average lay observer would recognize the alleged copy as having been appropriated from the original work.”[6] Original Appalachian Artworks, Inc. v. Toy Loft, 684 F.2d 821, 829 (11th Cir.1982) (citation omitted). “Proof of access and substantial similarity raises only a presumption of copying which may be rebutted by [McGee/Assigns] with evidence of independent creation.”[7] Id.
While McGee/Assigns assert that the two simple melodies are not substantially similar, much less strikingly similar, even a casual comparison of the two compositions compels the conclusion that the two compositions are practically identical. Given the limited number of musical notes (as opposed to words in a language), the combination of those notes and their phrasing, it is not surprising that a simple composition of a short length might well be susceptible to original creation by more than one composer.[8] However, in the realm of copyright, identical expression does not necessarily constitute infringement.[9] Just as two paintings of the same *1233 subject in nature may appear identical, the two paintings’ origins may be of independent creation.[10]
McGee can fully negate any claim of infringement if he can prove that he independently created “Emmanuel.” Benson v. Cocar-Cola Co., 795 F.2d 973, 975 (11th Cir.1986) (en banc) (“testimony [of writers of allegedly infringing song] constitutes uncontradicted evidence of independent creation, fully negating any claim of infringement”). Once McGee offers evidence of independent creation, Calhoun has the burden of proving that McGee in fact copied “Before His Eyes.” Miller v. Universal City Studios, Inc., 650 F.2d 1365,1375 (5th Cir.1981).
As the district court points out, McGee stated in his affidavit that he “independently created ‘Emmanuel’ during [a] church service in May or June 1976. [He] did not use any pre-existing material as a basis for the song. [He] did not use any sheet music, lead sheets or hymnals.” R3-116-21. Moreover, McGee provided affidavits of several witnesses who corroborate his independent creation of “Emmanuel” during a church service. R3-69-2. Calhoun did not offer any evidence to contradict McGee’s testimony. Therefore, the district court was correct in concluding that “McGee’s testimony constitutes un-contradicted evidence of independent creation, which fully negates any claim of infringement.” R3-116-22.
Furthermore, the district court found that “Emmanuel” was independently created by McGee because he had no access or reasonable opportunity[11] to view “Before His Eyes.” Calhoun provides three theories to attempt to establish McGee had access to view “Before His Eyes.” First, Calhoun alleges that he taught students from the state of Washington while he was an instructor at the Stamps-Blackwood School of Gospel Music in Kentucky, and that these students procured and made his music available to McGee. R3-116-6. Calhoun provided seven names and addresses of students from the state of Washington that he taught in the summers from 1972 to 1976. The district court noted that Calhoun did not indicate whether these seven students resided in Washington during the time period of 1972 to 1976, when he allegedly taught them. Furthermore, Calhoun did not offer any affidavits of these seven individuals to corroborate his allegations that they provided his mu *1234 sic to McGee or anyone associated with the King’s Temple Church. Nor did Calhoun proffer any evidence to rebut McGee’s affidavits or declarations stating that he created “Emmanuel” without any sheet music or lead sheets. McGee wrote “Emmanuel” during a church service at the King’s Temple Church in Seattle, Washington in the presence of eye witnesses who corroborate McGee’s independent creation of the song. R3-69-2, ¶ 2.
Calhoun also argues that McGee heard “Before His Eyes” on the radio, television, or at a performance. He performed “Before His Eyes” on television three times. However, Calhoun offered no admissible evidence to show that these performances were aired outside of Atlanta and Portsmouth, Virginia.[12] The only evidence offered by Calhoun was a letter from the producer of The 700 Club, where Calhoun performed “Before His Eyes” on 6 October 1972. The letter explained that the The 700 Club was broadcast throughout the South, but, most notably, the letter did not indicate that the show was available in any part of the Pacific Northwest region of the country.
In addition, Calhoun contended that “Before His Eyes” was performed and promoted at concerts, in churches, to record labels, and over the radio, specifically over The Grand Ole Opry Gospel Radio, which was syndicated from Nashville, Tennessee. The only evidence that his song was accessible in the state of Washington was a letter that Calhoun provided from the Operations manager of WSM, the radio station that broadcasts The Grand Ole Opry Gospel Radio, that stated “Reception of WSM in Washington state, therefore, while possible from time to time, is not likely to have occurred in the 1970s on anything resembling a consistent basis.” R3-116-8. Furthermore, Calhoun provided no evidence to refute McGee’s testimony that he had “never seen nor heard the television program Warner Robbins Presents,’ ... never seen the television program ‘The 700 Club,’ ” nor had he “heard the radio program ‘The Grand Ole’ Opry Gospel Hour.’ ” Id. at 8-9.
As the district court points out, the evidence does not support Calhoun’s claim that “Before His Eyes” received widespread publicity. Calhoun has only received $11 in performing rights and publishing royalties for “Before His Eyes.” Furthermore, Calhoun has no records of any royalties received from the sale of his album “It’s Through Our Faith,” on which “Before His Eyes” appears.
Finally, Calhoun asserted that McGee had access to his work because he sent “Before His Eyes” to Faith Music Company, which Lillenas Publishing Company purchased around 1975. Calhoun argued that McGee had dealings with Lillenas, and that Lillenas’ alleged possession of his song is sufficient to establish access. The district court found and the record supports that there was no connection between McGee and Lillenas. Calhoun did not offer any evidence to rebut McGee’s statement that he “never had any relationship with any music publishers” prior to 1976. R3-116-13. Therefore, Calhoun cannot prove access based on this theory either. Thus, citing no evidentiary basis for access and acknowledging a strong and unrefuted evidentiary basis for McGee’s claim of independent creation, the district court did not err in entering judgment against Calhoun.
III. CONCLUSION
These consolidated cases involve the appeal of a grant of summary judgment in *1235 which the district court held that there was insufficient evidence to show that “Emmanuel” was strikingly similar to “Before His Eyes,” and therefore, Calhoun had no claim for copyright infringement. We conclude that there is no genuine issue of material fact about McGee independently creating “Emmanuel.” Therefore, we AFFIRM the judgment of the district court, and conclude that Calhoun’s claims of copyright infringement should be barred by McGee’s bona fide claim of independent creation.

. The district court granted Calhoun’s motion to dismiss Zondervan Publishing House from the action. Additionally, the court granted Lillenas permission to add C.A. Music, Inc. as a third-party defendant.

. We may affirm the district court on different grounds as long as "the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court.” Ochran v. United States, 273 F.3d 1315, 1318 (11th Cir.2001) (citation omitted).

. It should be emphasized that independent creation is not an affirmative defense (i.e., a claim extraneous to the plaintiff’s prima facie case). Rather, independent creation attempts to prove the opposite of the Calhoun’s primary claim, i.e., copying by McGee. Keeler Brass Co. v. Continental Brass Co., 862 F.2d 1063, 1066 (4th Cir. 1988).

.He distributed publication of his musical work in 1970 and inserted and inscribed the copyright notice to the distributed publication in accordance with the Copyright Act of 1909, § 19. Calhoun eventually filed for registration for his claim of copyright in "Before His Eyes” in 1990.

. The King's Temple Church is now the New Beginnings Church.

. Where a plaintiff cannot demonstrate access he may, nonetheless, establish copying by demonstrating that his original work and the putative infringing work are strikingly similar. See Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1249 (11th Cir.1999); Benson v. Coca-Cola Co., 795 F.2d 973, 975 n. 2 (11th Cir.1986) (en banc)-, Ferguson v. National Broadcasting Co., 584 F.2d 111, 113 (5th Cir. 1978).

. Music is often the milieu in which the copyright concepts of “strikingly similar” and "independent creation” have been involved. See Selle v. Gibb, 741 F.2d 896 (7th Cir. 1984) (plaintiff failed to show that musical group Bee Gees had access to plaintiffs song "Let It End” before they composed "How Deep Is Your Love”); Benson, 795 F.2d at 975 (song "I'd Like to Buy the World a Coke” was an independent creation and did not infringe copyright of song "Don't Cha Know”); Repp & K & R Music, Inc. v. Webber, 132 F.3d 882 (2nd Cir.1997) (song "Till You” did not infringe copyright for song "Close Every Door”); Tisi v. Patrick, 97 F.Supp.2d 539 (S.D.N.Y.2000) (composer failed to show (1) that performer had access to "Sell Your Soul” and (2) the necessary "striking similarity” between "Sell Your Soul” and “Take a Picture”).

. This is particularly true in certain genres of music where familiar phrasing is present. Here the genre is church music. We are only dealing with a basic melody — -not lyrics or harmonic background or accompaniment— here, only a short melody is at issue.

. We have cautioned trial courts in this circuit "not to be swayed by the fact that two works embody similar or even identical ideas.” Toy Loft, 684 F.2d at 829 n. 11. See also MiTek Holdings, Inc. v. Arce Engineering Company, Inc., 89 F.3d 1548 (11th Cir. 1996) (competitor’s copying of protectable elements *1233 of copyrighted computer programs was de minimis and not actionable); Bateman v. Mnemonics, Inc., 79 F.3d 1532 (11th Cir. 1996).

. Franklin Mint Corp. v. National Wildlife Art Exchange, Inc., 575 F.2d 62 (3rd Cir.1978) (while ideas in the two paintings of cardinals involved were similar, the expressions were not, and thus, no copyright infringement); see also Leigh v. Warner Bros., 212 F.3d 1210, 1214 (11th Cir.2000) (photographs of the same sculpture portraying the figure in the same pose, alone, did not give rise to infringement); Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc., 843 F.2d 600 (1st Cir. 1988); Selle, 741 F.2d at 896 (stating that "two works may be identical in every detail, but, if the alleged infringer created the accused work independently or both works were copied from a common source in the public domain, then there is no infringement”); Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d 738 (9th Cir.1971) (copying of expression was not barred where "idea” of a jeweled bee pin and the "expression” of the "idea” were inseparable); 3 Nimmer, § 13.03[B][2][b] ("if the only original aspect of a work lies in its literal expression, then only a very close similarity, verging on the identical, will suffice to constitute an infringing copy.”).

. Since evidence of actual viewing or knowledge of the copyrighted work is virtually impossible to prove, we regard access as a "reasonable opportunity to view” the copyrighted work. Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1249 (11th Cir.1999).

. Calhoun stated in a deposition that he did not know what television station were affiliates of the CBN network during the time of his performances.