[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13916

_____

D.C. Docket No. 6:09-cv-01945-JA-GJK

SUNTREE TECHNOLOGIES, INC.,
a Florida corporation,

Plaintiff-Appellant,

versus

ECOSENSE INTERNATIONAL, INC.,
a Florida corporation,
GEORGE DUSSICH,

Defendants-Appellees,

 DERRICO CONSTRUCTION CORPORATION,
a Florida corporation,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 5, 2012)

Before DUBINA, JORDAN and ALARCON,[*] Circuit Judges.

ALARCÓN, Circuit Judge:

Suntree Technologies, Inc. ("Suntree") appeals from the district court's order denying its motion for summary judgment and granting the motions for summary judgment filed by Ecosense International, Inc. ("Ecosense") and George Dussich with regard to Suntree's claims of false designation of origin and false advertising under Section 43(a) of the Lanham Act, common law trademark infringement and unfair competition, and deceptive and unfair trade practices pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), codified at Fla. Stat. § 501.201 *et seq* (2012).  Suntree contends that the district court erred in concluding that Suntree failed to establish that Ecosense and Dussich directly or contributorily infringed on their trademark because it failed to present evidence of actual or of a likelihood of confusion.  We disagree and affirm.

I

Suntree manufactures a product called baffle boxes, which were described by Thomas Happel, the president of Suntree, in his declaration as "stormwater treatment structures that remove organic debris, trash, oil and other pollutants from stormwater before the stormwater reaches lakes, rivers and streams."  Suntree is

_____

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

2

the most well-known storm filtration product supplier in Florida. Suntree's baffle boxes have been certified by New Jersey's Corporation for Advanced Technologies program ("NJCAT"), a certification that is required to sell baffle boxes in New Jersey and in a number of other states. Florida recognizes NJCAT pre-approval of products. In his declaration, Happel alleged that "Suntree uses its NJCAT certification as a selling point for its baffle boxes because relatively few stormwater equipment companies have such certifications."

Ecosense also manufactures baffle boxes. It installed its first baffle box in 2008. George Dussich is the president and majority shareholder of Ecosense. Randy Burden is its vice-president and minority shareholder.

In the fall of 2008, the City of West Melbourne, Florida ("the City"), began soliciting bids for the City of West Melbourne Stormwater Quality Retrofit Project ("The CWM Project"). Contractors wishing to bid on the project obtained a packet of documents called the Bidding and Construction Contract Documents and Technical Specifications ("bidding documents"). The specifications in the bidding documents included the following requirement:

> NUTRIENT SEPARATING BAFFLE BOXES TO BE
> PROVIDED BY SUNTREE TECHNOLOGIES, INC.
> OR APPROVED EQUAL. CONSTRUCTION
> DETAILS AND SPECS ARE IDENTIFIED BY
> SUNTREE TECHNOLOGIES, INC. APPROVED
> EQUAL SHALL MEET OR EXCEED SUNTREE

3

TECHNOLOGIES, INC. SPECIFICATIONS.

The specifications listed Suntree baffle boxes as the "proposed baffle box manufacturer/model" for each of the nine baffle boxes to be installed.  Lawrence Jarvis, an employee of Jones Edmunds, who was hired by the County as the project engineer for the CWM Project, declared in his deposition that the City was not permitted under Florida law to designate Suntree as the sole manufacturer of baffle boxes absent a showing of special circumstances.

The bid solicitation form included in the bidding documents required bidders to list the subcontractors and suppliers they relied upon in calculating their bids.  It stated:

> The Undersigned states that the following is a full and complete list of the proposed subcontractors and suppliers on this Project and the class of work to be performed by each and that such list will not be added to nor altered without written consent to the Owner through the Engineer.

Article 11 of the instructions to bidders, included in the bidding documents, provided as follows:

> The Contract, if awarded, will be on the basis of materials and equipment specified or described in the Bidding Documents *without consideration of possible substitute or "or equal" items*.  Whenever it is specified or described in the Bidding Documents that a substitute or "or equal" item of material or equipment may be furnished or used by if acceptable to the Engineer,

4

*application for such acceptance will not be considered by the Engineer until after the Effective Date of the Agreement.*

(emphasis added).  Section 6.05 of the bidding documents provided that "[w]henever an item of material or equipment is specified or described in the Contract Documents by using the name of a proprietary item or the name of a particular Supplier, the specification or description is intended to establish the type, function, appearance and quality required."  Section 6.05 also set forth the process a contractor must go through in order to gain approval for an "or equal" item of material or equipment.  Approval was in the sole discretion of Jarvis, as the project's engineer.  Rather than incurring the expense of pre-approving an additional, less expensive supplier, the engineers for the City and County decided to use Suntree's name in the bidding specifications.  If the contractor who was awarded the project found a less expensive baffle box that was approved to be of equal quality to Suntree's, the benefit of the reduction in cost would go to the contractor.

Derrico Construction Corp. ("Derrico"), a general contractor, submitted a bid for the CWM Project that was significantly lower than the other bidders.  It was also approximately $85,000 less than the project engineer's estimate.  Mark Cattey, the estimator for Derrico who assembled Derrico's bid, alleged in his deposition

5

that, in conformity with the specifications in the bidding documents, Derrico's bid listed Suntree as the supplier for the baffle boxes because Derrico "did not know if an alternate would be accepted after award so [they] had to be covered to install [Suntree's] product" if necessary.

Carolina Alvarez, an engineer for the County, who worked on the CWM Project, reviewed Derrico's bid. Derrico's bid was accepted. At a pre-construction meeting in mid-January 2009, Derrico requested approval of Ecosense's baffle boxes as an "or equal" substitute as was permitted in the bidding documents distributed to potential bidders when the City was soliciting bids. Jarvis reviewed the specifications of the Ecosense baffle boxes and inspected an Ecosense baffle box installed in another municipality before approving it as a substitute for Suntree's product. Derrico installed Ecosense baffle boxes.

After the project was completed, Alvarez requested that Ecosense prepare a power point presentation to train the City's personnel on the proper cleaning and maintenance procedures for baffle boxes. The presentation showed baffle boxes being cleaned and maintained by municipal workers for the City of Rockledge, a city close to Ecosense's office. Ecosense had a good relationship with the City of Rockledge and their maintenance crew was capable and well-trained. Because both Ecosense and Suntree baffle boxes had been installed in the City of

6

Rockledge, the presentation included photographs of both Ecosense and Suntree baffle boxes.  Suntree's name was not included anywhere in the maintenance presentation.  The power point presentation was given to the City of West Melbourne and the City of Titusville.  Both were already customers of Ecosense at that time.  A link to the presentation was on Ecosense's website for three months, but was taken down when Suntree complained about the photographs.

## II

### A

Suntree filed a complaint in this matter against Ecosense, Dussich, and Derrico on November 13, 2009.  It subsequently filed an amended complaint on December 9, 2009.  The amended complaint alleged that Derrico, Ecosense, and Dussich's use of Suntree's trademark in the submission of Derrico's bid for the CWM Project and in the maintenance presentation was likely to cause confusion as to the origin of the products to be installed, was false and misleading, and was likely to deceive consumers.  Suntree also alleged that the conduct of Derrico, Ecosense, and Dussich in obtaining the contract constituted unfair competition, misleading and deceptive representations, and unfair practices under Florida state law.

### B

On January 10, 2010, Suntree entered into a settlement agreement with Derrico.  In the agreement, Derrico promised that in submitting future bids which provide "that it will use Suntree's products on the project, it will not seek to substitute or actually substitute any other products in place of Suntree's products on that stormwater filtration project."  Derrico also agreed to cooperate with Suntree in this litigation and to provide documents and witnesses, as well as a declaration from John Robertson, Derrico's president, setting forth the facts regarding his knowledge of the CWM Project.  Robertson's declaration stated as follows:

> From the beginning of our pre-bid analysis of the project with Ecosense and Mr. Dussich through it completion, we planned on using Ecosense's stormwater filtration products on the project and based the equipment costs in Section 5.01 of Derrico's bid on the cost of Ecosense's products, not Suntree's products.
>
> However, Mr. Dussich and I decided we would have a much better chance of being the winning bidder if we listed Suntree as the baffle box supplier in our bid.  We then planned to substitute Ecosense's products in place of Suntree's products after obtaining the contract.  Derrico would only have installed Suntree's products if the City denied our substitution request.

During his deposition, Robertson testified that he would change his declaration with regard to the statement that he and Dussich decided they would have a better chance of being the winner bidder if Suntree was listed as the baffle

8

box supplier in Derrico's bid because the statement "kind of read[] conspiracy-ish," but that Derrico always intended to "uphold [its] commitment to the City." He testified that "it was just a discussion [with Ecosense], if you can get this approved, great." Robertson further testified that Derrico's contact was mostly with Burden, not Dussich.

## C

During the course of discovery in this matter, Ecosense produced a brochure which displayed pictures and descriptions of its products. The brochure was emailed to customers in 2008 or 2009 and has since been updated several times. One of the photos on the brochure depicted a maintenance worker looking into the open hatch of a Suntree baffle box. Ecosense destroyed all copies of the brochure except one exemplar for use in this litigation.

## D

On March 18, 2011, Suntree, Ecosense, and Dussich filed motions for summary judgment. Suntree argued in support of its motion that the undisputed facts in the record established that Derrico had infringed on its trademark when it listed Suntree as the baffle box supplier in its bid. Suntree also alleged that Ecosense and Dussich were aware of Derrico's improper conduct.

In its motion for summary judgment, Ecosense maintained that the

9

"undisputed record evidence show[ed] that: 1) Derrico alone made the decision to list Suntree on the CWM bid documents; 2) that the express terms of the bid documents require[d] the contractor to list only pre-approved suppliers (in this case, Suntree); and 3) that the CWM bid documents expressly permit[ted] post-bid substitutions of alternative suppliers." Ecosense also asserted that the power point maintenance presentation was created for the training of existing customers. It also argued that there was no evidence in the record that demonstrated that the maintenance presentation or the brochure caused any customer confusion.

In his motion, Dussich requested that the district court grant summary judgment in favor of himself and Ecosense because neither was involved in drafting and submitting Derrico's bid. He also asserted that Derrico precisely followed the bidding documents' instructions for substituting suppliers and that the sophisticated buyers involved "were not mislead as to the source of the product."

The district court granted summary judgment in favor of Ecosense and Dussich and denied Suntree's motion for summary judgment.

Suntree has timely appealed. The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

III

10

Suntree contends that the district court erred in granting summary judgment in favor of Ecosense and Dussich with regard to its claims of false designation of origin pursuant to 15 U.S.C. § 1125, common law trademark infringement and unfair competition under Florida state law, and violations of FDUPTA. Suntree argues that the evidence demonstrated that Ecosense and Dussich contributorily infringed on Suntree's trademark in the bidding process for the CWM Project. It contends that the district court's grant of summary judgment in favor of Ecosense and Dussich should be reversed and that summary judgment should be entered in its favor. In the alternative, Suntree asserts that the district court's order should be vacated as to whether there was contributory infringement by Ecosense and Dussich because "a series of disputed facts" exist that should be decided by a jury.

"We review *de novo* the grant of a motion for summary judgment." *Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1264 (11th Cir. 2006). Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When the court reviews a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

11

A

The Lanham Act, codified at 15 U.S.C. §§ 1051-1127, protects trademark owners from infringement and unfair competition by "prohibiting the use in interstate commerce of any 'word, term, name, symbol or device, . . . or any false designation of origin . . . which is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.'" *Tana v. Dantanna's*, 611 F.3d 767, 772-73 (11th Cir. 2010) (quoting 15 U.S.C. § 1125(a)).  "FDUPTA makes illegal '[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . .'" *Sovereign Military Hospitallier Order of Saint John of Jerusalem of Rhodes & of Malta v. Florida Priory of Knights Hospitallers of the Sovereign Order of St. John of Jerusalem, Knights of Malta, the Ecumenical Order*, 816 F. Supp. 2d 1290, 1303 (S.D. Fla. 2011) ("*SMOM*") (quoting Fla. Stat. § 501.204(1)).  "The purpose of FDUPTA is '[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.'" *Id.* (quoting Fla. Stat. § 501.202(2)).

Suntree contends that the district court erroneously concluded that the legal

12

analysis is the same for all three counts in Suntree's complaint: violations of the Lanham Act, FDUPTA, and Florida state common law for infringement and unfair competition. We disagree. "[T]he legal standards we apply to [the FDUPTA] claim are the same as those we have applied under section 43(a) of the Lanham Act." *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1323 (11th Cir. 2011). "Plaintiff's failure to establish a likelihood of confusion as to its Lanham Act claim also extinguishes its claim under Florida law." *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 652 (11th Cir. 2007). "Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001).

B

Suntree maintains that the district court erred in concluding that Suntree failed to demonstrate that Derrico directly infringed on its trademark by using Suntree's name in its bid to the CWM Project. Suntree also asserts that the district court erred in granting summary judgment in favor of Ecosense and Dussich as to its claim against them for contributory infringement. It argues that summary judgment should have been granted in its favor because the record demonstrates that they induced Derrico to use Suntree's name in the bid. Alternatively, Suntree

13

argues that factual disputes exist that should be tried before a jury.

1

The district court held that Suntree "failed to prove any direct trademark infringement by Derrico, and Suntree's claim against Defendants for contributory infringement necessarily fails." (footnote omitted). Suntree's claim of trademark infringement under Section 43(a) of the Lanham Act is that the use of its name in Derrico's CWM Project bid constituted a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion." 15 U.S.C. § 1125(a)(1)(a). "To be liable for contributory trademark infringement, a defendant must have . . . intentionally induced another to infringe a trademark." 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:18 at p.25-54 (4th ed. 2012). "[A]ny liability for contributory infringement will necessarily depend upon whether or not the contributing party intended to participate in the infringement or actually knew about the infringing activities." *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1522 (11th Cir. 1992). To demonstrate that Ecosense and Dussich were contributory infringers, Suntree was required to present evidence that Derrico directly infringed on its mark. *Id.* at 1521 (Holding that contributory infringement is a device by which "'[l]iability for trademark infringement [extends] beyond

14

those who actually [infringe on] the mark of another.'") (quoting *Inwood Labs., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 859 (1982)).

In order to prevail on federal claim of trademark infringement and unfair competition, a trademark owner "must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Tana*, 611 F.3d at 773 (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997)).

"The law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting *consumers* from confusion as to source." *Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 157 (1989) (emphasis in original). A likelihood of confusion as to the source of a product is established using the test set forth in *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531 (11th Cir. 1986), *cert. denied*, 481 U.S. 1041 (1987). There, this Court stated:

> In determining whether a likelihood of confusion exists, the fact finder evaluates a number of elements including: the strength of the trade[mark], the similarity of [the marks], the similarity of the product[s], the similarity of retail outlets and purchasers, the similarity of advertising media used, the defendant's intent, and actual confusion.

*Id.* at 1538. "The issue of likelihood of confusion is not determined by merely analyzing whether a majority of the subsidiary factors indicates that such a

15

likelihood exists." *Id.* "Rather, a court must evaluate the weight to be accorded the individual factors and then make its ultimate decision." *Id.* "The appropriate weight to be given to each of these factors varies with the circumstances of the case." *Id.* However, "[o]f these seven factors, we consider the type of mark and the evidence of actual confusion to be the two most important factors." *Lone Star Steakhouse & Saloon v. Longhorn Steaks*, 122 F.3d 1379, 1382 (11th Cir. 1997) (citing *Dieter v. B & H Indus. of Southwest Florida, Inc.*, 880 F.2d 322, 326 (11th Cir.1989), *cert. denied*, 498 U.S. 950 (1990)).

No dispute exists as to 1) the type or strength of Suntree's mark; 2) the similarity of the companies' marks; 3) the similarity of the companies' products; 4) the similarity of the retail outlets and purchasers to which the companies market; or 5) the similarity of the advertising media the companies use. The district court did not err in determining that these factors were not helpful or relevant. Derrico did not use Suntree's mark to identify Ecosense's product, nor is there any question that the companies have similar names or marks. The dispositive issue in this case is whether Suntree presented evidence that demonstrates that there is a genuine issue of material fact in dispute regarding whether Derrico used Suntree's reputation to win a bid and then used a "bait-and-switch" tactic to substitute Ecosense's baffle boxes for those of Suntree.

16

We agree with the district court that Suntree failed to present any evidence that Derrico intended to confuse the City as to whose baffle boxes would be installed. Both Robertson and Cattey testified during their depositions that they intended to substitute Ecosense's baffle boxes once they were given the contract unless "no substitute was allowed." Cattey inquired about a substitution for baffle boxes at a meeting prior to submitting Derrico's bid and was referred to the specifications sheet in the bidding documents, which specifically allowed for "or equal" substitutions for baffle boxes. It is undisputed that, in listing Suntree in its bid, Derrico did what was required by the Instructions to Bidders, which provided that the contract would be awarded "without consideration of possible substitute or 'or equal' items" and that "application for such acceptance [would] not be considered by the Engineer until after the Effective Date of the Agreement." Suntree has failed to demonstrate that Derrico intended to deceive the City or that Derrico hid its intention to seek approval of a supplier whose product's specifications were equal to Suntree's product as a substitute baffle box supplier.

Suntree has also failed to present evidence that the City was confused at any time, not even in their "initial interest" or at the "point of sale," about the quality of baffle boxes they required or the fact that contractors could request approvals of substitute suppliers if the engineer for the city determined that the product to be

17

substituted was of equal quality.  The Instructions to Bidders stated that the requirement included in the specifications to install baffle boxes from Suntree "or equal" was "to establish the type, function, appearance and quality required" for use in the project.  Cattey testified in his deposition that Derrico submitted its request for approval of Ecosense as a substitute baffle box supplier knowing that "if no substitute was allowed [by the project engineer], . . . then the only product to be installed would be Suntree's and [Derrico] would have installed it."

Because Suntree failed to present evidence of an intent to mislead or confuse, or of actual confusion, we need not reach the question whether initial interest confusion is actionable in the Eleventh Circuit.  The district court correctly concluded that Suntree failed to demonstrate that Derrico had infringed on its trademark when it listed Suntree as the supplier of baffle boxes in its bid and requested an "or equal" substitution of Ecosense after being awarded the contract. It follows that because there was no evidence of infringement, Suntree's claim that Ecosense and Dussich contributed to the infringement necessarily fails.

C

Suntree also contends that summary judgment was inappropriate as to its claim against Ecosense and Dussich of false designation of origin and false advertising regarding the use of images of Suntree's products by Ecosense in a

18

brochure and a maintenance presentation because genuine factual disputes exist as to this claim.

1

Suntree asserts that Ecosense's use of photographs of Suntree's product in promotional materials was an attempt to pass off Suntree's baffle boxes as their own.  "Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's. . . . 'Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own."  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003).

> To  prevail on a false designation of origin claim, a plaintiff must show it was either actually or likely to be damaged by the fact that the defendant used a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which was likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

*Lipscher v. LRP Publ'ng., Inc.*, 266 F.3d 1305, 1312-1313 (11th Cir. 2001) (quoting 15 U.S.C. § 1125(a)(1)(A)).

As stated above, to demonstrate infringement, a party "must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had

adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Tana*, 611 F.3d at 773 (citation omitted).

We agree with the Sixth Circuit's opinion in *Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998), that where "the defendant has taken the plaintiff's product and has represented it to be his own work[,]" the first five factors of the likelihood of confusion test are irrelevant. *Id.* at 503. As to factor six, Suntree failed to present evidence that Ecosense had any intention to portray Suntree's product as its own. In fact, Ecosense's immediate destruction of the brochure and its elimination of the maintenance presentation from its website support its assertion that Ecosense did not intend to confuse potential customers with photos of Suntree's product. *See Can-Am Eng'g Co. v. Henderson Glass, Inc.*, 814 F.2d 253, 257 (6th Cir. 1987) ("Plaintiff confuses the intentional use of the photo with the kind of intent to misrepresent which is the cornerstone of a money damage action. We note in this regard the swift and effective remedial action [Defendant] undertook immediately upon being notified of its error. Under such circumstances we find no false representation which is actionable under the Lanham Act."). As to factor seven of the *AmBrit* test, the record reflects that there was no confusion on the part of any of the CWM Project's engineers. Accordingly, the district court did not err in

20

concluding that Suntree failed to present evidence of a likelihood of confusion or elements of a claim for false designation of origin in Ecosense's use of images of Suntree's products in either its maintenance presentation or its brochure.

2

Suntree also asserts that Ecosense infringed on its trademark by falsely advertising using images of Suntree's baffle boxes in its brochure and maintenance presentation. "A Lanham Act false advertising claim arises when '[a]ny person who, on or in connection with any goods . . . uses in commerce any . . . false or misleading description of fact,  or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods[.]'" *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1330 (11th Cir. 2008) (quoting 15 U.S.C. § 1125(a)). "The intent of this provision is to protect commercial interests that have been harmed by a competitor's false advertising, and to secure to the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not." *Id.* at 1330-31 (internal quotation marks, alterations and citation omitted).

To establish a prima facie case of false advertising pursuant to 15 U.S.C.

§ 1125(a), a plaintiff must establish that the defendant:

1.  Uses a false or misleading
    A.  Description of fact or
    B.  Representation of fact;
2.  In interstate commerce;
3.  And in connection with goods or services;
4.  In commercial advertising or promotion;
5.  When the description or representation misrepresents the nature, qualities geographic origin of
    A.  The defendant's foods, services or commercial activities or
    B.  The goods, services or commercial activities of another person;
6.  And plaintiff has been or is likely to be damaged by these acts.

5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:24

(4th ed. 2007) (footnotes omitted).

The most widely-accepted test for determining whether something is

"commercial advertising or promotion" is set forth in *Gordon & Breach Sci.*

*Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994).  In that

case, the District Court for the Southern District of New York stated:

> In order for representations to constitute "commercial advertising or promotion" under Section [1125(a)], they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently

22

> to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Gordon & Breach*, 859 F. Supp. at 1535-36.  Suntree has failed to demonstrate that there is a genuine issue of material fact in dispute regarding whether the brochure and maintenance presentation were created "for the purpose of influencing consumers to buy defendant's goods or services" and that they were "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry."  *Id.*  The record shows that the maintenance presentation was created at the request of an existing client.  It was not created to promote or advertise Ecosense's products, but for training customers who had already purchased the product.  The engineers who worked on the CWM Project testified that brochures would not be at all helpful in their determination as to whether or not they would buy, or allow use of, a product like a baffle box.  Suntree also failed to present any evidence that the brochure was actually disseminated to any potential customers.  We agree with the District Court for the Northern District of Georgia in *Schütz Container Sys., Inc. v. Mauser Corp.*, 2012 U.S. Dist. LEXIS 44012 (N.D. Ga. Mar. 28, 2012), that "where the customer market is particularly small[,] courts may find a statement to be sufficiently disseminated to constitute 'commercial advertising or promotion,' even though

23

only distributed to a few customers (or even one)."[1]  *Id.* at 96.  However, similar to the plaintiff in *Schutz Container*, Suntree "fail[ed] to put forward any evidence regarding the number of potential consumers . . . to whom the statements were disseminated," thus failing the demonstrate that "a reasonable jury could find [the statements] to constitute 'commercial advertising or promotion.'" *Id.* at 96-97.  The district court did not err in granting summary judgment in favor of Ecosense and Dussich as to Suntree's false advertising claim.

## CONCLUSION

For the reasons set forth above, the district court did not err in granting summary judgment in favor of Ecosense and Dussich, and denying Suntree's motion for summary judgment.

AFFIRMED.

---

[1]In this Circuit, "unpublished opinions are not binding precedent but they may be cited as persuasive authority."  *See* 11TH CIR. R. 36-2; *U.S. v. Rodriguez-Lopez*, 363 F.3d 1134, 1138 n.4 (11th Cir. 2004).