[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10013
_____

D.C. Docket No. 8:17-cv-01795-WFJ-CPT


BUDDY WEBSTER,
p.k.a. Buddy Blaze,

                                                      Plaintiff-Appellant,

versus

DEAN GUITARS,
ARMADILLO ENTERPRISES, INC.,
ARMADILLO DISTRIBUTION ENTERPRISES, INC.,
ESTATE OF DIMEBAG DARRELL ABBOTT,
an unknown entity,
DOES,
7-10 inclusive, et al.,

                                                      Defendants-Appellees,

WAL-MART STORES, INC.,

                                                      Defendant.

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 16, 2020)

Before WILSON, BRANCH, and JULIE CARNES, Circuit Judges.

WILSON, Circuit Judge:

This case concerns the alleged copyright infringement of a lightning storm graphic that originally appeared on the guitar of Darrell Abbott, late guitarist of the heavy-metal band Pantera. The Appellant Buddy Webster, a successful guitar maker and technician, designed Abbott's guitar in the mid-1980s and commissioned someone to paint the lightning storm graphic on it. Since 2004, guitar producer Dean Guitars (Dean) has produced and sold guitar models based on Abbott's guitar and featuring the lightning storm graphic, without Webster's consent and without paying him royalties for the use of the design.

In 2017, after a decade of being displeased with Dean's reproduction of Abbott's guitar and the lightning storm graphic, Webster sued Dean and several others (collectively, Appellees) in federal district court, alleging, as relevant to this appeal, copyright infringement, unfair competition, and false endorsement. The district court granted summary judgment in favor of the Appellees on all claims. On appeal, Webster argues that the district court erred when it concluded that

2

(1) his copyright infringement claim was actually a claim of copyright ownership and was time-barred; (2) his unfair competition claims failed because the statements underlying those claims were not false or misleading; and (3) his false endorsement claim failed because he did not present evidence of a likelihood of consumer confusion. After reviewing the record and the parties' briefs, and with the benefit of oral argument, we affirm the district court.

## I.

### A. FACTUAL BACKGROUND

Buddy Webster is a guitar maker and technician who goes by the name "Buddy Blaze." In 1985, he modified a Dean ML guitar, produced by Dean, and paid someone to paint a lightning storm graphic on the guitar. In 1987, Webster gave the guitar to his friend Darrell Abbott. Abbott later became a successful guitarist in the band Pantera. Abbott called the guitar "The Dean from Hell" (DFH). In 2004, Abbott entered an endorsement-type contract with Dean. But in December of that year, he was shot and murdered on stage by a deranged fan.

Around the time of Abbott's death, Dean started selling reissues of the DFH guitar. Webster first learned about the sales of the reissues in December 2004. Dean never asked Webster for his permission to sell the reissues, and Webster never approved of the sales. In 2006, Webster learned that Dean was selling a cheaper, imported version of the DFH called the Cowboy from Hell. Webster was

3

unhappy that Dean was selling these two versions of the DFH, so, in 2006, he emailed then CEO of Dean, Elliot Rubinson, and expressed his displeasure. Webster told Rubinson that Dean could not sell the reissues without his permission; Dean did not stop selling the guitars.

In April 2007, Webster contacted Rubinson again and expressed his concerns about the guitar sales. Rubinson responded by email, stating

> I have taken some time and spoken to several "people in the know" and the consensus concerning [the lightning storm graphic] is that [Abbott's] estate is the legal owner of it. With that said, I still would like to work with you on [an Abbott] project because I am not about making enemies but keeping friends.

Rubinson also stated, "Rita and I have plans to do a relic [DFH] and would like you involved for a royalty. Is that of interest?" Webster testified that he called Rubinson after he read the email, and Rubinson suggested that he sue Abbott's estate if he was still upset. Rubinson had never paid Webster royalties for the DFH reissues and continued to pay royalties to Abbott's estate.

Despite Webster's displeasure with Dean's production and sale of the DFH reissues, he worked with Dean in 2009 to create and sell his own signature guitar model—the "Buddy Blaze ML." He also willingly appeared in multiple interviews

4

in 2008 and 2009 discussing his role in the history of the original DFH.[1] Dean used videos of some of these interviews and posted them to its YouTube channel. The first video is an interview of Webster at the 2008 National Association of Music Merchants (NAMM) tradeshow, in which he is standing in front of the original DFH recounting its history. In the second video, Webster appears in an interview alongside Rubinson at the 2009 NAMM show, promoting the Buddy Blaze ML, speaking about the history of the original DFH, and comparing his Buddy Blaze ML model with the DFH. The third video is a similar interview of Webster at the 2009 NAMM show. It shows him describing the Buddy Blaze ML and referring to Abbott and the DFH. The DFH reissues are not mentioned in the videos.

From 2009 to 2015, Dean released several other versions of the DFH. In 2009, Webster learned that Dean was marketing and selling a new version of the DFH known as the "Rust from Hell." Dean then released a guitar featuring the lightning storm graphic called the "Black Bolt." Finally, in 2015, Dean issued the

---

[1] In addition, Webster maintains the following information about the DFH and the Buddy Blaze ML on his website:

> Buddy is also the creator of the legendary "Dean From Hell". Buddy totally reinvented his previously maroon colored 1981 Dean ML, later giving it to his close friend "Dimebag" Darrell Abbott. Lightning struck twice in 2009 when Buddy collaborated with Dean Guitars to launch the Buddy Blaze Signature Dean ML!

*History*, BUDDY BLAZE U.S.A., http://www.buddyblaze.com/history/ (last visited March 20, 2020).

"Limited USA Dean from Hell."  Webster claimed that he "had finally had enough" at this point, and, in 2016, he retained counsel and obtained a copyright registration in the lightning storm graphic.

B. PROCEDURAL BACKGROUND

In April 2017, Webster filed suit in the U.S District Court for the Central District of California against Dean and several others.  In July 2017, the court granted a motion by some of the defendants to transfer venue to the Middle District of Florida.  Relevant to this appeal, Webster alleged copyright infringement, based on Dean's sale of the DFH reissues; and unfair competition under the Lanham Act, Florida common law, and California statutory law, based on Dean making misleading representations to cause confusion about the connection between Dean, Webster, and Webster's approval or sponsorship of the DFH reissues.[2]  Webster and the Appellees filed cross motions for summary judgment.

The district court granted summary judgment in favor of the Appellees on all claims and denied Webster's motion for summary judgment as moot.  The court decided that Webster's copyright infringement claim was time-barred because the claim accrued more than three years before Webster filed suit.  In doing so, the court first concluded that the "gravamen" of Webster's claim of copyright

---

[2] Webster also asserted claims under Texas law of invasion of privacy and civil conspiracy, but he does not appeal the district court's grant of summary judgment in favor of the Appellees on those claims.

6

infringement was ownership. It stated that this Circuit had not defined the point of accrual for a copyright ownership claim, but explained that other circuits followed one of two tests for determining the accrual of such claims: in some circuits, an ownership claim accrues when ownership is expressly repudiated to the claimant; and in others, a claim accrues when the plaintiff learns, or should as a reasonable person learn, that the defendant is violating his rights. Ultimately, the court concluded that Webster's claim was time-barred under either test. The court further concluded that because Webster's copyright ownership claim was time-barred, any remaining infringement claim was also time-barred.

Next, the court addressed Webster's unfair competition claims. It explained that § 41(a) of the Lanham Act provides two bases of liability—false endorsement and false advertising—and that Webster had mainly argued a theory of false advertising at summary judgment. The court concluded that Webster's false advertising claim failed because there was no evidence that Dean used a false or misleading statement to sell the DFH reissues. The court found that most of the statements Webster relied on were his own statements in the video interviews and that there were no statements that Webster endorsed, sponsored, or derived income from the DFH reissues. The court noted that one person stated in a declaration that he attended a NAMM show and "heard Dean representatives using Buddy's name when selling guitars like the one that Buddy Blaze re-built for [Abbott]." But the

7

court found that there was nothing untrue or misleading about this statement. Furthermore, the court stated that Webster admitted to voluntarily participating in each video and said that he was not harmed by the videos from the 2009 NAMM show. Accordingly, the district court concluded that Webster had not presented evidence of a false or misleading statement to support a false advertising claim under the Lanham Act. And, for the same reasons, the court decided that no untrue or misleading statements were made to support an unfair competition claim under Florida common law or California statute.

Finally, in a footnote, the court stated that "[p]erhaps because neither party spent significant time addressing false endorsement or likelihood of confusion, the Court has very little material on which to base" an analysis of Webster's false endorsement claim under the Lanham Act. Nonetheless, the court concluded that "even if 'Buddy Blaze' is a protectable mark, the record contains insufficient evidence for a reasonable jury to find that [the Appellees'] limited usage of [Webster's] name creates a likelihood of confusion about [Webster] endorsing the DFH reissues."

## II.

We review a district court's grant of summary judgment de novo. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmovant must point to enough evidence that "a reasonable jury could return a verdict for him." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (alteration accepted). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*

**III.**

Webster raises several challenges to the district court's decision that his copyright claim is time-barred. First, he argues that the court erred when it concluded that the gravamen of his copyright claim was ownership, because he had registered his copyright in the lightning storm graphic and the Appellees did not dispute his ownership in a counterclaim or affirmative defense. Second, he asserts that copyright ownership claims do not have a different accrual date than copyright infringement claims and that, under *Petrella v. Metro-Goldwyn Mayer, Inc.*, 572 U.S. 663, 670 (2014), an infringement claim accrued each time Dean reproduced the lightning storm graphic. Alternatively, he argues that his claim survives summary judgment even if a separate accrual standard applies because he had no reason to know that his ownership claim had accrued. Third, he claims that his

9

copyright infringement claim survives even if the ownership claim is time-barred.[3]

We disagree with each of Webster's arguments.

Under the Copyright Act, a civil copyright action must be brought within three years after the claim accrued. 17 U.S.C. § 507. In *Petrella*, the Supreme Court stated that a copyright infringement claim "ordinarily accrues when a plaintiff has a complete and present cause of action," that is, "when an infringing act occurs." 572 U.S. at 670 (alteration accepted) (internal quotation mark omitted). But *Petrella* concerned a non-ownership copyright infringement claim. And though we have not previously addressed the issue, other circuits draw a distinction between the accrual of copyright infringement and copyright ownership claims.

The Sixth and Ninth Circuits have held that a copyright ownership claim accrues when "there is a 'plain and express repudiation' of ownership by one party as against the other." *Ritchie v. Williams*, 395 F.3d 283, 288 n.5 (6th Cir. 2005); *see also Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996) ("[C]laims of co-ownership, as distinct from claims of infringement, accrue when plain and express repudiation of co-ownership is communicated to the claimant."). The

---

[3] Webster argues for the first time on appeal that the limitation period in the Copyright Act bars only remedial, not substantive, rights. We decline to consider this claim, as it was not raised in the district court. *See Iraola & CIA S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1284–85 (11th Cir. 2003).

10

First, Second, Fifth, and Seventh Circuits have held that copyright ownership claims accrue "when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights." *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004); *see also Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) ("An ownership claim accrues only once, when "a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right."); *Pritchett v. Pound*, 473 F.3d 217, 220 (5th Cir. 2006) (holding that an alleged copyright co-owner's "declaratory judgment rights accrued when it knew or had reason to know of the injury upon which the claim is based"); *Santa-Rosa v. Combo Records*, 471 F.3d 224, 228 (1st Cir. 2006) ("[A] claim for declaratory judgment of ownership accrues when the plaintiff 'knew of the alleged grounds for the ownership claim.'") (alteration accepted). Additionally, at least one circuit has held that "where the gravamen of a copyright infringement suit is ownership, and a freestanding ownership claim would be time-barred, any infringement claims are also barred." *See, e.g.*, *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1255 (9th Cir. 2013).

The district court properly concluded that Webster's copyright claim was time-barred. To begin, the court properly characterized Webster's claim as one primarily concerning copyright ownership. Webster's main argument is that he owns the lightning storm graphic and the Appellees have reproduced it without his

11

consent. The parties agree that Dean has reproduced the graphic on several guitar models without Webster's permission, leaving ownership the only disputed issue. Further, in their Answer, the Appellees raised as an affirmative defense the statute of limitations, asserting that Abbott's estate clearly and expressly repudiated Webster's copyright ownership in the lightning storm graphic in 2007. Additionally, Webster's copyright registration does not entitle him to a presumption that his copyright is valid, given that he registered the graphic in 2016—about 30 years after the original DFH was created. *See* 17 U.S.C. § 410(c) (stating that a certificate of registration made within five years after first publication of a work constitutes prima facie evidence of the validity of the copyright). Therefore, the court correctly determined that the gravamen of the case is ownership.

We have not previously decided whether copyright ownership claims have a different accrual standard than copyright infringement claims. Today, we agree with the district court and our sister circuits and hold that, unlike an ordinary copyright infringement claim, which accrues for each infringing act, a claim concerning mainly ownership accrues only once. This is consistent with *Petrella*—which did not concern a copyright ownership claim. *See* 572 U.S. 663. And we adopt the approach used by the First, Second, Fifth, and Seventh Circuits—that an ownership claim accrues when the plaintiff learns, or should as a

12

reasonable person have learned, that the defendant was violating his ownership rights—as this approach is most consistent with our existing precedent. *See Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir. 1990) (stating that federal claims generally "accrue when the plaintiff knows or has reason to know of the injury which is the basis of the action"); *Calhoun v. Lilenas Publ'g*, 298 F.3d 1228, 1236 (11th Cir. 2002) (Birch, J., concurring) (noting that a copyright infringement claim's "limitations period may be triggered when a plaintiff knows or, in the exercise of reasonable diligence, should have known about an infringement"). Thus, Webster's copyright ownership claim accrued when he knew, or reasonably should have known, that his ownership rights in the lightning storm graphic were being violated.

Webster had reason to know that his alleged ownership rights were being violated as early as 2004, when he first learned that Dean was producing DFH reissues. But if that were not sufficient to put him on notice that his rights were being violated, Rubinson's email in 2007 stating that "the consensus concerning [the lightning storm graphic] is that [Abbott's] estate is the legal owner of it" was certainly sufficient. Therefore, Webster's claim accrued in April 2007 at the latest, and the three-year limitation period expired years before he brought his copyright claim in 2017. Moreover, to the extent that Webster asserts a separate copyright infringement claim, that claim is also barred. *See Seven Arts Filmed Entm't Ltd.*,

13

733 F.3d at 1255; *see also Calhoun*, 298 F.3d at 1236 & n.5 (Birch, J., concurring) (concluding that when a copyright ownership claim is time-barred, "all those claims logically following therefrom should be barred, including infringement claims," and citing precedent in other circuits). Accordingly, we affirm the district court's grant of summary judgment in favor of the Appellees on Webster's copyright claim.

**IV.**

Webster also challenges the district court's ruling on his unfair competition claims. He argues that the district court erred by concluding that the Appellees did not make false or misleading statements, and that the court failed to consider the statements in context. Webster asserts that the statements in the interview videos are misleading and likely to cause consumer confusion because, after viewing the videos on Dean's website and reading Dean's advertising copy for the DFH reissues, a reasonable person would assume that Webster was working with Dean on the reissues. Webster relies on the videos in which he discusses the history of the DFH, as well as statements by Dean advertising the DFH reissues as similar to "the one that Buddy Blaze painted" and featuring the "iconic, [DFH] lightning bolt paint job." He claims that these statements were made in a purely commercial context and convey that he had approved of the sale of the reissues.

14

False advertising under the Lanham Act requires, among other things, a showing that the defendant made false or misleading statements and that the plaintiff was injured. *Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015). Unfair competition under Florida common law requires "deceptive or fraudulent conduct of a competitor and likelihood of consumer confusion." *Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 914 (11th Cir. 1986). Unfair competition in California includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

The district court correctly granted summary judgment in favor of the Appellees on Webster's false advertising and unfair competition claims because the statements he relies on were not false or misleading. The videos Webster relies on contained his own statements regarding his involvement in the creation of the DFH, and his involvement is not disputed. None of the videos stated that Webster was promoting or selling the DFH reissues. One of the videos shows Webster promoting his own signature guitar—the Buddy Blaze ML—and another shows him comparing his model with the DFH. Thus, the videos accurately show Webster describing his part in the history of the DFH, which he has used to his own advantage to sell his own model. The statements in these videos do not become misleading, nor do they imply that he endorses or benefits from the sale of

the DFH reissues, simply because they appear near Dean's advertisements of DFH reissues. Therefore, Webster did not present sufficient evidence to support his unfair competition and false advertising claims, and we affirm the district court's ruling as to these claims.

## V.

Last, Webster claims that the district court erred when it concluded that his false endorsement claim failed for lack of evidence of a likelihood of consumer confusion. Specifically, Webster argues that his presence in Dean's promotional materials and videos "was 'inescapably interpreted' by the audience of guitar-enthusiasts [as] an endorsement."

Section 43(a) of the Lanham Act prohibits false product endorsements by imposing liability on

> [a]ny person who, on or in connection with any goods . . . , uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods . . . by another person.

15 U.S.C. § 1125(a)(1)(A). Thus, as with trademark infringement claims under the Lanham Act, a plaintiff alleging false endorsement of goods must show a likelihood of consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of goods being sold. *See Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012); *see also Univ. of Ala. Bd. of Trs.*

*v. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012) ("[W]e have never treated false endorsement and trademark infringement claims as distinct under the Lanham Act."). In this case, Webster has a viable cause of action for false endorsement under § 43(a) only if consumers were likely to believe from Dean's marketing that he sponsored or approved the DFH reissues.

When determining whether there is a likelihood of confusion between two marks for purposes of an infringement claim, we consider seven factors: (1) the strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks; (5) similarity of advertising methods; (6) the intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public. *Tana v. Dantanna's*, 611 F.3d 767, 774–75 (11th Cir. 2010). "The appropriate weight to be given to each of these factors varies with the circumstances of the case." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986). This is a false endorsement claim, however, in which the allegations of false endorsement are grounded on videos in which Webster appeared to willingly promote his legacy as creator of the DFH. For that reason, factors six and seven are the only relevant factors here. Webster did not expressly address the likelihood-of-confusion factors in the district court or in this

court. Instead, he seems to claim that, given his notoriety in the guitar-enthusiast world, the mention of his name near or in relation to the DFH reissues must have caused consumers to mistakenly believe that he endorsed the sale of the reissues. But we do not just assume a likelihood of consumer confusion when a mark is used in the proximity of advertising for a product, especially when a legitimate use of that mark is clear from the context.

Webster presented little or no evidence that Dean intended to misappropriate his goodwill in the sale of the DFH reissues. Rather, he presented video interviews that show him, several years after he became aware of the DFH reissues, willingly discussing the history of the DFH to promote his legacy and sell his own guitars. He does not mention the DFH reissues in the interviews. Further, Webster has not presented evidence of the existence or extent of actual consumer confusion. Thus, because Webster has not established a likelihood of consumer confusion, mistake, or deception, the district court properly granted summary judgment in favor of the Appellees on his false endorsement claim. Accordingly, we affirm the district court.

**AFFIRMED.**